NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KENNETH H. MANNING, | ) | |
| | ) | Supreme Court No. S-16461 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-11-00367 CI |
| v. | ) | |
| | ) | |
| STATE OF ALASKA, DEPARTMENT | ) | MEMORANDUM OPINION |
| OF FISH & GAME and AHTNA TENE | ) | AND JUDGMENT* |
| NENÉ, | ) | |
| | ) | |
| Appellees. | ) | No. 1691 – August 15, 2018 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Anna Moran, Judge.

Appearances: Kenneth H. Manning, pro se, Kasilof, Appellant. Cheryl R. Brooking, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee State of Alaska, Department of Fish and Game. No appearance by Appellee Ahtna Tene Nené.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices. Bolger, Justice, with whom Stowers, Chief Justice, joins, dissenting in part.

## I.    INTRODUCTION

Kenneth Manning sued the Alaska Department of Fish and Game, challenging a new regulation. After the superior court granted the State's motion for

---

*    Entered under Alaska Appellate Rule 214.

summary judgment, Manning appealed. We affirmed the superior court's decision on the merits but vacated its attorney's fee award and remanded to the superior court for a new attorney's fees determination. Manning appeals the superior court's attorney's fee award on remand and alleges judicial bias.

## II. FACTS AND PROCEEDINGS

In 2009 the Board of Game (Board) amended its regulations to change the way it issued permits for subsistence hunters of caribou and moose in Game Management Unit 13, an area known as the Nelchina basin.[1] Kenneth Manning sued the Department of Fish and Game challenging the amendments later that year.[2] The superior court granted summary judgment for Manning on several of his claims and enjoined the Board from implementing the changes.[3] After the superior court's decision, the Board amended its permitting system again in October 2010.[4]

In 2011 Manning again sued the Department of Fish and Game, challenging the 2010 regulations.[5] He brought 30 constitutional and non-constitutional claims against the State. Ahtna Tene Nené (Ahtna) intervened as a defendant.[6] In 2013 the superior court granted summary judgment in favor of the State and Ahtna. The court

---

[1]     *Ahtna Tene Nené v. State, Dep't of Fish & Game*, 288 P.3d 452, 455-56 (Alaska 2012).

[2]     *Id.* at 456.

[3]     The State appealed the superior court's grant of partial summary judgment, but we found that the case had become moot because updated regulations had been implemented in 2011. *Id.* at 457-58.

[4]     *Id.* at 456-57.

[5]     *Manning v. State, Dep't of Fish & Game*, 355 P.3d 530, 533 (Alaska 2015).

[6]     *Id.* at 534.

awarded attorney's fees of $4,573 to the State and $1,080 to Ahtna.[7] Manning appealed.[8]

On appeal we affirmed the superior court on all matters except its calculation of attorney's fees.[9] We determined that 19 of Manning's 30 claims were constitutional claims for which Manning could not be ordered to pay attorney's fees.[10] We held that it was error to award fees for work on general procedural issues because, in the absence of clear evidence to the contrary, we had to assume that all general procedural work was connected to Manning's constitutional claims.[11] And we concluded it was error to award attorney's fees for unidentified work hours based on a pro rata approach.[12] We remanded for a new calculation of attorney's fees in accordance with our decision.[13]

On remand the State filed a renewed motion for attorney's fees. It requested $4,041 representing 20% of its fees for 89.8 hours it identified as necessarily incurred solely to defend against Manning's non-constitutional claims. The State attached the same itemized fee schedule it had used in its earlier request for attorney's

---

[7]    The superior court found that the State was entitled to an award of $9,146.25 in attorney's fees and that Ahtna was entitled to an award of $2,160.00 in attorney's fees, but the court reduced the hourly rate of both parties by 50% because it found that Manning was indigent.

[8]    *Manning*, 355 P.3d at 532.

[9]    *Id.* at 540.

[10]    *Id.* at 539.  *See* AS 09.60.010(c)(2); Alaska R. Civ. P. 82.

[11]    *Manning*, 355 P.3d at 540.

[12]    *Id.*

[13]    *Id.*

fees, but highlighted the items that it believed related solely to non-constitutional claims.

Manning filed a motion to strike the State's renewed motion for attorney's fees, alleging that the State failed to comply with our remand order. Manning also filed a motion to abate attorney's fees, arguing that he was indigent and that all of his claims were constitutional. The State contested Manning's claim that he was indigent in its reply, alleging he owned property that he had not disclosed.

The superior court found that the State's list of hourly costs was reasonable and appeared to be necessary to defend against Manning's non-constitutional claims with one exception: The State had requested attorney's fees for its work to respond to Manning's motion to disqualify Judge Moran. The court found that this work was general procedural work, and it did not include those hours in its award of attorney's fees. The court awarded $3,816 in attorney's fees for the remaining hours that the State had requested. The court declined to abate the award. It found that if Manning had the resources to pursue this case and planned to pursue similar claims in the future, then he could afford the award of $3,816. The court also expressed uncertainty whether Manning was truly indigent because of property he or his trust allegedly owned that had not been disclosed to the court. The court found that the award would not have a chilling effect on Manning or future litigants.

Manning filed a motion for reconsideration, arguing that the superior court had not complied with our remand order. He objected to the superior court's statement that he received $1,000 per month from public assistance, rather than $1.00 per month. Manning challenged the court's statements that he had not disclosed real property and that the award would not be an undue financial hardship. The court denied the motion to reconsider, clarifying that it had not included the hours the State claimed relating to

Manning's motion to disqualify and that the $1,000 figure in the earlier order had been a typographical error that had not affected its award.

Manning appeals.

## III.   STANDARD OF REVIEW

"We review de novo whether the trial court applied the law correctly in awarding attorney's fees."[14]   "We review awards of attorney's fees for an abuse of discretion . . . ."[15] We "will only reverse if the award is 'arbitrary, capricious, manifestly unreasonable, or stemmed from improper motive.' "[16]

We have observed that "[i]t is not obvious what standard of review applies to an appellate claim that a trial court was biased, if the trial court had no opportunity . . . to resolve a claim of judicial bias."[17]   We have suggested that we may apply "de novo review [or] abuse of discretion review."[18]

## IV.   DISCUSSION

### A.   Attorney's Fees

Manning argues that the superior court inappropriately awarded fees for work related to constitutional claims and that the State did not submit adequate documentation to differentiate between constitutional and non-constitutional claims. We

---

[14]     *Id.* at 535 (quoting *Lake & Peninsula Borough Assembly v. Oberlatz*, 329 P.3d 214, 221 (Alaska 2014)).

[15]     *Wagner v. Wagner*, 183 P.3d 1265, 1266 (Alaska 2008).

[16]     *Id.* at 1266-67 (quoting *Ware v. Ware*, 161 P.3d 1188, 1192 (Alaska 2007); *Strong Enters., Inc. v. Seaward*, 980 P.2d 456, 458 (Alaska 1999)).

[17]     *Greenway v. Heathcott*, 294 P.3d 1056, 1062 (Alaska 2013).

[18]     *Id.* at 1062-63.

find that the court inappropriately awarded fees for two items, but we disagree with Manning's other arguments.[19]

### 1. It was appropriate for the superior court to award attorney's fees related to the supplemental brief.

Alaska Civil Rule 82(b)(2) requires the court to award 20% of actual attorney's fees that were necessarily incurred to a prevailing party who did not recover a money judgment in a case that did not go to trial.[20] Alaska Statute 09.60.010(c)(2) creates an exception to the rule that prohibits the court from ordering payment from a claimant who brought a non-frivolous constitutional claim and did not have sufficient economic incentive otherwise to bring the claim. In *Manning* we identified which of Manning's claims against the State were claims for which attorney's fees could potentially be awarded.[21]

---

[19] Throughout his brief, Manning argues the merits of his previous appeal, which we have already decided. *Manning v. State, Dep't of Fish & Game*, 355 P.3d 530 (Alaska 2015). All of Manning's arguments challenging the validity and constitutionality of the regulations are foreclosed by res judicata. *See Girdwood Mining Co. v. Comsult LLC*, 329 P.3d 194, 200 (Alaska 2014) ("The doctrine of res judicata, or claim preclusion, 'prevents a party from suing on a claim which has been previously litigated to a final judgment by that party . . . and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action.' " (alteration in original) (quoting *McElroy v. Kennedy*, 74 P.3d 903, 906 (Alaska 2003))). We will not address them further.

[20] "In cases in which the prevailing party requires no money judgment, the court . . . shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred." Alaska R. Civ. P. 82(b)(2).

[21] *See Manning v. State, Dep't of Fish & Game*, 355 P.3d 530, 539 & n.48 (Alaska 2015).

Almost all of the fees that the superior court included in its award on remand relate to the State's preparation of a supplemental brief. The issues discussed in this supplemental brief relate to count 6 in Manning's initial complaint.[22] In the prior appeal, we identified this claim as one that was not evidently constitutional and for which attorney's fees could potentially be awarded.[23]

The superior court ordered supplemental briefing to address "the formulation and use of the phrase 'reasonable opportunity' as used in AS 16.05.258(f)[24] to determine Alaskan resident subsistence hunt opportunities . . . [and] how the amount reasonably necessary for subsistence, or 'ANS,' is determined, and how the ANS affects the issuance of community harvest, Tier 1, and draw hunting permits for Nelchina caribou in Game Management Unit 13." The State's supplemental brief did not make any facially constitutional arguments; it focused on the interpretation of AS 16.05.258, the legislative history of "reasonable opportunity," whether the ANS was reasonable, and whether the Board eliminated "railbelt subsistence users." The issues discussed, and requested by the trial court for briefing, were statutory: whether the statute was properly applied and how to interpret certain terms within the context of the statute. Further, in

---

[22] Count 6 in the initial complaint alleged that the State "[u]nlawfully eliminate[d] all urban hunters as subsistence hunters for purposes of reducing the 'amount necessary for subsistence' ('ANS') to arbitrarily, unreasonably, and unlawfully set and implement a Tier-I level hunt instead of a statutorily mandated Tier-II level hunt to protect long-time dependence and reliance on subsistence use, contrary to AS 16.05.258(b)(4) *et seq.*"

[23] *See Manning*, 355 P.3d at 539 & n.48.

[24] AS 16.05.258(f) ("For purposes of this section, 'reasonable opportunity' means an opportunity, as determined by the appropriate board, that allows a subsistence user to participate in a subsistence hunt or fishery that provides a normally diligent participant with a reasonable expectation of success of taking of fish or game.").

the prior appeal we stated that "the Board's ANS calculation [did] not implicate . . . the equal access, uniform application, or equal protection clauses of the Alaska Constitution."[25]

It was therefore not error to award attorney's fees for work relating to the supplemental brief. And the court did not err by relying on the documentation provided by the State because the documentation adequately demonstrated which items related to the supplemental brief.

Manning alleges that the superior court's attorney's fee award included general procedural work[26] in violation of the remand order. The fee schedule that the State attached to its renewed motion for attorney's fees listed general procedural work. But the State requested only the specific items that it highlighted on the fee schedule in its renewed motion for attorney's fees; the State did not highlight fees for general procedural work, except for work on the motion to disqualify. The court did not award fees for the motion to disqualify or other general procedural work.[27]

> **2.  It was error for the superior court to award the State fees for work not obviously related to a non-constitutional claim.**

The court awarded the State fees for two items that were not related to the supplemental brief; it was error to do so. The first item, from July 13, 2012, was based on "[r]eview[ing] Board of Game meeting transcripts, add[ing] to opposition to MSJ and

---

[25]  *Manning*, 355 P.3d at 536.

[26]  Specifically, Manning alleges the award included "airline travel, all work on general pleadings, law clerks/assistants, phone calls with Ahtna attorney Starkey, etc."

[27]  One of the highlighted items in the fee list does include a phone call with Ahtna's attorney, but the phone call appears to be related to the supplemental brief as it is in a list with other work explicitly related to the supplemental brief discussed above.

cross-MSJ." The second item, from November 20, was "[r]eview[ing] Manning's public records request to ADF&G and civil rules, draft[ing] response requiring him to go through discovery process." It is not self-evident that either of these items were necessary only because of non-constitutional claims. Because "Rule 82 attorney['s] fees may be awarded only for work that would not have been necessary but for a non-constitutional claim,"[28] and the State did not demonstrate that these items were solely the result of non-constitutional claims, fees cannot be awarded for them.[29]

### 3. It was not error to deny Manning's motion to abate the attorney's fees award.

Manning argues that he is a public interest litigant and that the court erred by denying his motion to abate attorney's fees. But in 2003 the Alaska Legislature replaced the public interest litigant exception with AS 09.60.010,[30] which instructs that, except as otherwise provided by statute, a court "may not discriminate in the award of attorney fees and costs to or against a party in a civil action or appeal based on the nature of the policy or interest advocated by the party."[31]

---

[28] *Id.* at 539 (alteration in original) (quoting *Lake & Peninsula Borough Assembly v. Oberlatz*, 329 P.3d 214, 228 (Alaska 2014)).

[29] The State claimed $406.51 for the July 13 item and $93.81 for the November 20 item. Together these items total $500.32, 20% of which is $100.06. The attorney's fee award should be reduced by $100.06 on remand.

[30] *Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 280 (Alaska 2015); *see* Ch. 86, § 2, SLA 2003.

[31] AS 09.60.010(b). As discussed in the previous section, there is an exception for non-frivolous constitutional claims. AS 09.60.010(c).

Manning also argues that the superior court should have abated the award of attorney's fees because he is indigent.[32]  The court considered Manning's claim of indigency in its attorney's fee award but declined to abate the award.  Manning argues that the court made two incorrect assumptions about his financial situation that led to its failure to abate the award.

First, he argues that the superior court incorrectly believed that he received $1000.00 per month in public assistance rather than $1.00.  The initial order does incorrectly state the amount that Manning receives per month in public assistance, but the court addressed this issue in its response to Manning's motion for reconsideration.  The court clarified that the error "was a typo" that had no effect on its final award of attorney's fees.  Second, Manning argues that the court incorrectly considered that he had parcels of land in a trust that were allegedly not disclosed to the court.  The superior court did not make any findings on this point, but stated that "[t]here is also a question as to whether Manning is truly 'indigent' given that he (or his trust) has an interest in various pieces of real property that had not been previously disclosed to the court."  Manning argues that he disclosed the property to the court before the State introduced it.  Manning does not direct us to any evidence of an earlier disclosure in the record.

The superior court noted that Manning "admits he has been paying 'hundreds of dollars' out of pocket for . . . this law suit and appeals."  It reasoned that if he could afford the "hundreds of dollars" he could also "afford a modest attorney fee award of $3,816."  In light of the statement that Manning had the resources to continue

---

[32]    *See Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 595 (Alaska 2007) (approvingly noting that the superior court reduced the State's hourly billing rate because the litigant was indigent); *see also David S. v. Jared H.*, 308 P.3d 862, 875 (Alaska 2013).

litigating similar claims, the award was not manifestly unreasonable or an abuse of discretion.

The court also found that there was no need to abate the award to avoid a chilling effect on other indigent litigants. Manning takes issue with this, apparently arguing that the court was required to abate the fees because they would deter him from bringing future claims. While a court may consider "the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts" to vary an attorney's fee award[33] and "*may* depart from the Rule 82 schedule by considering the enumerated equitable factors[, it] is by no means required to do so."[34] The superior court did not abuse its discretion by not reducing the award under this factor.[35]

### B.    There is no evidence of judicial bias.

Manning argues that the superior court judge acted with bias and prejudice against him throughout the course of the litigation. He made this judicial bias argument in his previous appeal; we found that the argument was "conclusory and inadequately

---

[33]    Alaska R. Civ. P. 82(b)(3)(I).

[34]    *Greene v. Tinker*, 332 P.3d 21, 42 (Alaska 2014) (emphasis in original); *see also Rhodes v. Erion*, 189 P.3d 1051, 1055 (Alaska 2008) ("Application of Rule 82(b)(3) factors is discretionary, not mandatory.").

[35]    *See Wagner v. Wagner*, 183 P.3d 1265, 1266 (Alaska 2008). Manning also argues that the attorney's fees awarded against him should be reversed under the catalyst theory because the Board has begun considering proposals to eliminate the community harvest permits. This argument is waived because Manning raises it for the first time on appeal. *See Hooks v. Alaska USA Fed. Credit Union*, 413 P.3d 1192, 1197 (Alaska 2018).

developed" and considered it waived.[36] His bias claims relating to the underlying litigation are precluded by res judicata.[37]

Manning claims that the attorney's fee order on remand demonstrates the judge's bias. Manning brings this claim for the first time in this appeal. In *Greenway v. Heathcott* we assumed, without deciding, that bias claims first made on appeal were properly before the court.[38]

But " '[i]n order to prove a claim of judicial bias,' a party must show that the judge 'formed an opinion of him from extrajudicial sources.' "[39] Manning has not alleged that the judge relied on any extrajudicial sources in determining the attorney's fee award on remand. Further, our review of the record does not suggest that she did so.[40] As we have repeatedly stated, "[m]erely making decisions that a plaintiff considers unfavorable is not bias."[41]

---

[36]  *Manning v. State, Dep't of Fish & Game*, 355 P.3d 530, 538 (Alaska 2015).

[37]  *See Girdwood Mining Co. v. Comsult LLC*, 329 P.3d 194, 200 (Alaska 2014);  *Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1251 (Alaska 2001).

[38]  294 P.3d 1056, 1063 (Alaska 2013).

[39]  *Berry v. Berry*, 277 P.3d 771, 774 (Alaska 2012) (quoting *Peterson v. Ek*, 93 P.3d 458, 467 (Alaska 2004)).  *See also Williams v. Williams*, 252 P.3d 998, 1010 (Alaska 2011) ("To prove a claim of judicial bias, the claimant must show that the judge formed an opinion of [him or] her from extrajudicial sources, resulting in an opinion other than on the merits.").

[40]  Manning also alleges that our earlier decision demonstrated bias. Manning has not alleged that we considered any improper extrajudicial evidence; accordingly, his argument is without merit.  *See Berry*, 277 P.3d at 774.

[41]  *Williams*, 252 P.3d at 1010; *see also Hooks v. Alaska USA Fed. Credit Union*, 413 P.3d 1192, 1197 (Alaska 2018) ("Litigants cannot rely solely on 'adverse

(continued...)

All of Manning's claims of bias are either precluded by our previous decision or have no merit.

## V.    CONCLUSION

The superior court's award of attorney's fees is VACATED and REMANDED for entry of a new attorney's fee award in compliance with this decision.

---

**41**    (...continued)
rulings' as evidence of bias . . . .").

Bolger, Justice, with whom Stowers, Chief Justice, joins, dissenting in part.

I agree with most of the court's decision. But I disagree with the discussion in section IV.A.2 reversing the fee award for two time entries. I believe that Kenneth Manning waived his objection to these entries by his failure to object to them in the superior court and by his failure to discuss them in his opening brief.